## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**SCOTT MILLER**                                                                                    **PLAINTIFF**


**V.**                                       **NO. 4:06-CV-00515 GTE**


**NORTH LITTLE ROCK POLICE**
**DEPARTMENT, CITY OF NORTH LITTLE ROCK**
**and DANNY BRADLEY, individually and in his**
**capacity as Chief of Police for the North Little Rock Police**
**Department**                                                                                     **DEFENDANTS**


## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

Before the Court is Defendants' Motion for Summary Judgment.  Plaintiff has responded

to the motion.  Additionally, the Defendants have submitted a reply in further support of their

motion.  After reviewing the entire summary judgment record, the Court concludes that Plaintiff

has failed to demonstrate a material issue of fact as to any of his claims.  Accordingly,

Defendants are entitled to judgment as a matter of law.

Plaintiff Scott Miller raises three separate claims.  First, under Arkansas law, he seeks a

de novo review of a three day suspension imposed by the North Little Rock Police Department

("NLRPD") and affirmed by the North Little Rock Civil Service Commission ("Commission").

Second, Plaintiff claims that Defendants interfered with his rights under the Family Medical

Leave Act ("FMLA").  Third, Plaintiff seeks relief under the Arkansas Constitution.

### I.       FACTS WITHOUT MATERIAL CONTROVERSY

The Court will describe separately the facts related to Plaintiff's suspension for his

conduct in June 2005, the alleged FMLA violation in September 2005, and the constitutional

claim.  While the facts are described separately, the Court recognizes Plaintiff's theory that his suspension is an integral part of both his FMLA and constitutional claims.  For example, Plaintiff contends his suspension was motivated by his assertions that his FMLA rights had been violated.  Plaintiff's state constitutional claim is based on the assertion that his suspension "was motivated by his petitioning the Defendant and exercising his right to communicate is [sic] thoughts and opinions" about alleged conduct on the part of Sgt. Neff.  (Am. Complaint at ¶ 17).

>        A.        **Plaintiff's three-day suspension**

Plaintiff Miller was hired as a police officer by the NLRPD on or about June 16, 1997.  The NLRPD had in place certain Standards of Conduct and General Orders.  All police officers were obligated to familiarize themselves with the Standards and Orders and to obey same.

From June 12 through June 20, 2005, Plaintiff took paid sick leave from his job with the NLRPD due to an off-duty injury to his right knee.  During four of the days Plaintiff was on sick leave from the NLRPD, he worked off-duty at a second job training dogs for Little Rock K-9 Academy ("K-9 Academy").[1]    Miller began working for the K-9 Academy in approximately 2003.  Miller failed to execute an approved Outside Employment/Enterprise Form, as required by applicable Orders, for his work at the K-9 Academy in 2004 and 2005.[2]

---

[1]  Plaintiff worked at the K-9 Academy from 2-9 p.m. on June 14, 15, and 16th.  He worked from 2-4 p.m on June 17th.  Miller was paid $350 for his work during these 4 days.
Plaintiff's work for K-9 Academy involved teaching dog handlers how to handle narcotics and patrol dogs.  Plaintiff assisted with introducing vehicle and structural search patterns for narcotic detector dog training, obedience training, tracking, building search and criminal apprehension training for patrol dog training, and K-9 handler problem solving.  Plaintiff appeared in his NLRPD uniform in a website advertisement for the K-9 Academy, a violation of stated policy.

[2]  The record indicates that Plaintiff executed appropriate forms for off-duty employment in 2000, 2001, 2002, and 2003.  The record is unclear as to whether Plaintiff completed a form for his K-9 Academy work in 2003.

Additionally, when Miller returned to work for the NLRPD after June 20, he represented, falsely, in a required "Employee Sick Leave Report" that he had not engaged in any off-duty employment while on sick leave. Specifically, the form asked: "Did you engage in any off-duty employment within 24 hrs. prior to or at the conclusion of sick leave?" Mr. Miller checked the box marked "No." (Exh. I-3, Employee Sick Leave Report). Mr. Miller explained this apparent dishonest response by stating that he thought that "off-duty employment" related only to law enforcement work, such as working as a security officer. (Defs.' Exh. I-9, at pp. 3-4).

Captain Mike Davis, a superior officer in Plaintiff's chain of command, learned of Miller's possible violation of the Standards of Conduct regarding off-duty employment. Captain Davis recommended to Police Chief Danny Bradley that the Professional Standards Unit (PSU) conduct an investigation into the allegations. In response, Chief Bradley asked PSU to investigate. PSU conducted an investigation, during which Plaintiff Miller, Sergeant Neff and Lieutenant Eugene Tyree were interviewed.

On November 1, 2005, Miller was provided with a Notice of Administrative Hearing advising him that he was being considered for disciplinary action, including discharge, for violation of Standards of Conduct # 11 (Dishonesty or Untruthfulness), # 13 (Establishing Patterns of Absenteeism), and # 17 (Knowing, Observing, and Obeying all Directives, Rules, Polices, Procedures, Practices, and Traditions). At Miller's request, an administrative hearing was held on November 9, 2005. Miller was represented by counsel at the hearing.

Chief Bradley concluded that Miller violated Standards of Conduct # 17. Lieutenant Tyree and Captain Davis, both of whom were present during the administrative hearing, recommended that Miller be suspended for three days. Chief Bradley, who alone had the authority to determine the punishment for the offense, imposed a three day suspension effective

November 14, 2005, as recommended.

Standard of Conduct # 17 provides:

> **Knowing, Observing, and Obeying all Directives, Rules, Polices, Procedures, Practices and Traditions**
>
> Members will display an affirmative, consistent effort to observe and comply with the directives, rules, policies, procedures, practices and traditions established for the effective, efficient, and safe operations of this Department.  This standard applies to policies, procedures and practices that are written as well as those established by past patterns or practices.
>
> "Affirmative effort" as the term is used here means to self-initiate acceptable ways to comply.  In other words, members will be expected to look for ways to comply with the standard and not look for exceptions to the standard.

The NLRPD's General Order 20-5 regulates "Off-Duty Employment."  The provision regulates the off-duty employment and business interests of officers.  By its terms, the Order required Plaintiff to submit an "Outside Employment/Enterprise Form" disclosing his employment with the K-9 Academy.  Plaintiff failed to do so in 2004 and 2005.  General Order 20-5 also provides that "[e]mployees absent from duty due to illness of the employee may not engage in additional employment for twenty-four (24) hours following the end of the shift for which they reported ill."

Miller appealed his suspension to the North Little Rock Civil Service Commission ("Commission"), requesting that the punishment be reduced to a letter of reprimand.  In the appeal, Miller did not deny violating the General Order, but he claimed his violation was unintentional.  Miller also argued that the initiation and investigation of the June incident was retaliatory by Sgt. Neff.  The Commission conducted a hearing on March 9, 2006.  On March 14, 2006, the Commission affirmed the NLRPD's decision.

   B.     **FMLA claim**

Plaintiff contends that the NLRPD violated the FMLA by failing to provide him with notice of his FMLA rights.  Plaintiff also argues that his three day suspension was motivated by his complaints that Officer Neff interfered with Plaintiff's FMLA rights.  Thus, Plaintiff alleges that he was suspended in retaliation for asserting FMLA rights.

On September 12, 2005, at approximately 4:35 a.m., Plaintiff contacted Sergeant Bartlett to advise that he needed to take a "sickness in family" day.  Later that same day, at approximately 1:45 p.m., Sgt. Neff came to Miller's house.  Both Plaintiff and his wife were home with their sick child.  Plaintiff reported that Sgt. Neff asked if it took both Plaintiff and his wife to watch the child, pointed out that Plaintiff had used between 14 and 16 sick days that year, and noted that Plaintiff had "left him short" by calling in that day.  (Exh. I-6, Interview of Plaintiff, at 57).  Plaintiff asserts that this was "not a permissible action to verify Family and Medical Leave usage." (Amended Complaint at ¶ 12).   Plaintiff also complains that the Defendants failed to follow the required procedures to confirm Plaintiff's entitlement to FMLA leave.

   C.     **Constitutional Claim**

Plaintiff also contends that his suspension was motivated by his earlier complaints about Sgt. Neff to Lt. Tyree.   On August 30, 2007, Plaintiff wrote a letter to Lt. Tyree complaining about Sgt. Neff.  Therein, Plaintiff complained that Sgt. Neff had acted unprofessionally when he made remarks to another officer that Plaintiff abused his sick leave and took vacation inappropriately.  (Defs.' Exh. I-6, at p. 16-17).

   II.    **SUMMARY JUDGMENT STANDARD**

Summary judgment should be entered if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986).  A genuine issue of material fact exists only if there is sufficient evidence from which a jury can return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

Summary judgment is appropriate when the party opposing the motion bears the ultimate burden of persuasion at trial and fails to establish a fact issue as to each essential element of his claim on which he bears the burden of proof.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-24 (1986);  *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 718 (8th Cir. 2000), cert. denied, 531 U.S. 1077 (2001).

One of the principle purposes of summary judgment is to dispose of factually unsupported claims.  *Celotex*, 477 U.S. at 323-24.  The moving party's burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's csae."  477 U.S. at 325.  As the Supreme Court has noted:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322.

### III.   DISCUSSION

### (1)   The Court affirms Plaintiff's Three-Day Suspension

Arkansas law provides for a de novo review of the North Little Rock Civil Service Commission's decision to uphold Plaintiff's three day suspension.  Ark. Code Ann. § 14-51-308(e)(1)(A).  The Court is obligated to review the Commission's decision on the record.

Additionally, the Court has the authority to permit additional testimony or evidence. *Id.*

Arkansas law requires a de novo review, as opposed to a "substantial evidence" review. *City of Little Rock v. Hubbard*, 82 Ark. App. 119, 122, 112 S.W.3d 375, 377 (Ark. App. 2003). Accordingly, Plaintiff's appeal of his suspension "is in the nature of an original action." Even so, at the summary judgment stage, Plaintiff is obligated to come forward with any additional evidence he wishes to present in support of his claim. Plaintiff has not provided any affidavits or other additional evidence, only argument. While Plaintiff references witnesses whose testimony he wished to present during the Commission's hearing, he has made no effort to present such testimony as part of the summary judgment record. The Court is not obligated to conduct a trial to permit Plaintiff the opportunity to provide evidence that could and should have been presented in responding to Defendants' summary judgment motion. The Court has, however, considered the entire summary judgment record, including the facts related to Plaintiff's FMLA and constitutional claims, in determining whether the Commission's decision to suspend Plaintiff was justified.[3]

It is undisputed that Miller performed work for K-9 Academy while on paid sick leave with the NLRPD. It is undisputed that Miller failed to disclose his outside employment to the NLRPD. Miller argues, however, that he believed the rules regarding outside employment only applied to "work in a law enforcement capacity."[4] Miller further contends that he did not intend to violate NLRPD's standard and orders. Finally, Miller is suspicious about the three or four month delay in instigating the proceedings resulting in his suspension.

---

[3] From reviewing the transcript of the hearing before the Commission, it appears that the Commissioners did not permit Plaintiff to interject issues related to Sergeant Neff's September 12th visit to Plaintiff's home while Plaintiff was on paid sick leave to care for his daughter.

[4] (Exh. I - 6 to Def.s' motion, p. 4).

Regardless of his intent, the proof indicates that Miller committed a material violation of the rules.  Plaintiff failed to receive prior permission to work at the K-9 Academy and he failed to advise the NLRPD that he had worked another job while on paid sick leave.  Finally, Plaintiff affirmatively misrepresented the truth when he checked "no" to the question: "Did you engage in any off-duty employment within 24 hours prior to or at the conclusion of sick leave?"

Plaintiff's defense that he acted in good-faith is not a valid defense to the charge justifying his suspension.  Chief Bradley found in Plaintiff's favor on the charge of dishonesty as well the other charges.  Chief Bradley suspended Plaintiff solely for his violation of Standards of Conduct # 17.  That Standard, quoted *supra*, required Plaintiff to make an affirmative effort to observe and comply with all directives, rules, polices, procedures, and practices.  Plaintiff admitted during the hearing that he had not even read the department's policy on off-duty employment prior to his violation.[5]  Such admission and Plaintiff's undisputed violations compel the conclusion that Plaintiff violated Standard # 17.

The decision to suspend Miller for three days is more than justified by this record.  The NLRPD and the Commission obviously gave some consideration to Plaintiff's defense; otherwise, its seems that more violations would have been found and a more severe penalty imposed.  *See, e.g, Dalton v. City of Russellville*, 290 Ark. 603, 720 S.W.2d 918 (Ark. 1986)(affirming officer's termination for failure to obtain written permission to engage in off-duty employment).

The Commission's decision is affirmed.

---

[5]  (Defs.' Exh. I-9, September 26, 2005, Transcript of Hearing, p. 4).  Plaintiff's defense that he was ignorant of department policy is undercut by the fact that he managed to complete the required off-duty employment forms in 2000, 2001, 2002, and 2003.

**(2)**     **Plaintiff has failed to create a material issue of fact on his FMLA claim.**

The Court discussed Plaintiff's FMLA claims in-depth in ruling on Defendant's Motion to Dismiss.  (See Court's Order of August 25, 2006, Doc. # 22).   Defendants have done an excellent job of briefing the FMLA issues and demonstrating, over the course of almost five pages, why Plaintiff's claims should fail as a matter of law.  Plaintiff's brief response fails to negate Defendants' analysis.   Plaintiff has not submitted any additional evidence in support of his claims.  Finally, Plaintiff's response focuses primarily on the issue of whether he provided sufficient information to the NLRPD to put them on notice of a possible FMLA leave situation.[6] Indeed, most of Defendants' arguments are unopposed by Plaintiff.  The Court will therefore not discuss all of Plaintiff's FMLA related allegations in-depth.

In sum, Plaintiff has failed to come forward with facts to demonstrate that the FMLA is implicated in any form or fashion in this case.  First, Plaintiff sought and was granted pay for the leave he took to care for his daughter.  Plaintiff did not need or seek unpaid leave under the FMLA.  Second, even if Plaintiff had sought leave under the FMLA, Plaintiff's daughter was not suffering from a "serious medical condition" and thus, Plaintiff would not have been entitled to leave under the FMLA.[7]  Third, Plaintiff failed to provide his employer with notice sufficient to trigger any duty on the part of the NLRPD to inquire further regarding Plaintiff's need for FMLA leave.   Finally, Plaintiff has failed to come forward with evidence sufficient to prevail on a retaliation claim.

---

[6] It therefore appears that Plaintiff has conceded or abandoned all other theories for relief under the FMLA.

[7] Plaintiff has made no effort to identify his daughter's particular medical condition.  It appears that Plaintiff's daughter was temporarily ill with a common childhood ailment , such as a virus or other infection, as opposed to a "serious health condition" triggering FMLA leave.  The FMLA was never intended to provide unpaid leave for such illnesses.

Plaintiff argues that the fact that the NLRPD's delay in launching an investigation into Plaintiff's June misconduct, and the timing of such investigation, immediately after Sgt. Neff drove to Plaintiff's house on September 12th, would allow the jury to conclude that Plaintiff's complaints about Sgt. Neff's "interference with the FMLA" was a motivating factor in his suspension.  Plaintiff's argument fails for several reasons.  First of all, temporal nexus alone can not substitute for causation, which is clearly lacking here.  Plaintiff has failed to come forward with specific evidence to demonstrate that he complained that Sgt. Neff had violated his FMLA rights prior to the administrative proceedings being launched.  It appears that Plaintiff had complained about Sgt. Neff.  But, such complaints had nothing to do with an alleged FMLA violation.  Finally, even assuming that Plaintiff did complain, prior to the suspension hearing, to the actual decision-makers that the FMLA had been violated, there is insufficient proof from which a jury could conclude that the NLRPD suspended Plaintiff to punish him for reporting an FMLA violation, legitimate or erroneous.

The NLRPD has provided a legitimate non-discriminatory reason for the three-day suspension – Plaintiff's uncontroverted violation of Orders and Standards.  Thus, at this point, in order to prevail on his retaliation claim, Plaintiff must "demonstrate that the proffered reason is not the true reason for the employment decision."  *Stallings v. Hussmann Corp*., 447 F.3d 1041, 1052 (8th Cir. 2006)(omitting internal citation and quotations).  Plaintiff may be suspicious that his employer waited until three months after his June violations to bring charges, but such suspicion is insufficient to prove the retaliatory intent necessary to prevail on this claim.  *Id*. at 1051 ("retaliation claim requires proof of retaliatory intent").  Plaintiff's suspicions are no substitute for evidence, of which the record is lacking.

Plaintiff has failed to carry his burden to establish a material factual dispute as to any of

his assorted FMLA claims.

### (3)   Plaintiff's has failed to create a material issue of fact on his constitutional Claim

As an alternative theory, Plaintiff claims his suspension was motivated by his August 30th letter complaining about Sgt. Neff and that it therefore violated his rights under the Arkansas Constitution, Article 2, Section 4 and 6, protecting an individual's right to petition the government and freedom of speech.  The Arkansas Civil Rights Act ("ACRA") provides a vehicle for redress of an alleged violation of a citizen's constitutional rights.  Ark. Code Ann. § 16-123-105(a).  The ACRA specifically states that decisions under its federal counterpart, 42 U.S.C. § 1983, "shall have persuasive authority."  Ark. Code Ann. § 16-123-105(c).

For the reasons well stated by the Defendants, the Court concludes that Plaintiff has failed to demonstrate that he engaged in constitutionally protected conduct or that there is any causal connection between Miller's alleged constitutionally protected activity and his suspension.  The Court specifically predicts that the Arkansas Supreme Court would not extend constitutional protection to a public employee's purely personal speech.  Thus, the Court agrees with Defendants that the analysis set forth in *Connick v. Meyers*, 461 U.S. 138 (1983), extending constitutional protection to speech addressing a matter of public concern but denying such protection to speech addressing matters of personal interest, is applicable to Plaintiff's claim for violations of Arkansas constitutional law.  In conclusion, Plaintiff has failed to demonstrate that he engaged in any constitutionally protected conduct and this claim therefore fails as a matter of law.

### III.   CONCLUSION

The Court is of the opinion that none of Plaintiff's claims presented close issues of fact or law.  For the reasons herein stated,

IT IS HEREBY ORDERED THAT Defendants' Motion for Summary Judgment (docket entry # 31) be, and it is hereby, GRANTED.  A Judgment is being entered contemporaneously herewith.

IT IS SO ORDERED THIS  _24th_  day of July, 2007.

_/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT COURT